14-10/WDM
FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Wayne D. Meehan
Gina M. Venezia
*Attorneys for Defendant*
*EITZEN CHEMICAL (SINGAPORE) PTE. LTD.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STAMPORTS INC. and NOBLE AMERICAS CORP.<br><br>Plaintiffs,<br><br>-against -<br><br>M/V SICHEM DEFIANCE, her engines, etc., in rem; and EITZEN CHEMICAL (SINGAPORE) PTE. LTD.<br><br>Defendant. | **10-cv-0810 (CM)**<br><br>**DECLARATION IN OPPOSITION TO MOTION FOR DISCOVERY IN AID OF ARBITRATION** |

WAYNE D. MEEHAN, declares under penalty of perjury, as provided in 28 U.S.C. § 1746 as follows:

1.     I am a member of the bar of this Court and partner in the firm of Freehill Hogan & Mahar, LLP, attorneys for Defendant herein.  I make this Declaration in opposition to Plaintiffs' motion for discovery in aid of maritime arbitration based on my own knowledge, or based on information and documents supplied to me by Defendant, which information I believe to be rue.

2.     Eitzen Chemical (Singapore) Pte. Ltd. (hereinafter "Owners") is the registered owner of the M/V SICHEM DEFIANCE, and is a business entity organized and existing under

Singapore law, with an address at 35-05, Millenia Tower, 1, Temasek Avenue, Singapore 039192.

3.     Owners chartered the M/V SICHEM DEFIANCE to Stamports Inc., the chartering arm for Noble Americas Corp. (hereinafter "Noble") for the carriage of a cargo of anhydrous ethanol from New York to Jamaica pursuant to charter party dated December 22, 2009. (The "charter party" is attached as Exhibit A to the Declaration of Michael Marks Cohen.)

4.     Part II, Clause 24 of the Asbatankvoy Form Charter Party specifically provided that "any and all difference and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York . . ." The clause is specific that the parties were free to apply to the Court in circumstances where the other party refused to appoint its arbitrator, and the parties were free to apply to the Court for a judgment on any award issued by the arbitrators. However, the clause does not contain a reservation of any rights to take advantage of discovery procedures available in Court under the Federal Rules of Civil Procedure. (See Part II, Clause 24 Asbatankvoy Arbitration Form, Declaration of Michael Marks Cohen, Exhibit A.)

5.     The M/V SICHEM DEFIANCE arrived in New York and anchored at Gravesend Bay at 7:00 p.m. on January 9, 2010. The Barge FREEDOM came alongside at approximately 8:00 p.m. and hoses were connected for purposes of transferring the cargo from the FREEDOM to the SICHEM DEFIANCE. All of the cargo tanks were inspected, and the crew of the SICHEM DEFIANCE checked all of the PV valves to ensure that they were working properly. After all the necessary inspections were completed, and after conducting a meeting between the vessel and barge personnel to coordinate procedures for the transfer, the M/V SICHEM DEFIANCE began loading cargo from the Barge FREEDOM at 0010 on January 10, 2010.

Attached as **Exhibit 1** is a copy of the "Port Log" from the SICHEM DEFIANCE which is the vessel's contemporaneous record of the events which occurred.

6.     At approximately 0730, an able bodied seaman who was stationed on deck heard two noises, and vessel personnel located in the accommodation area felt two "shudders". The vessel immediately shutdown the cargo operations, and inspections revealed that there were two holes in the deck of the ship in the vicinity of 3 Starboard cargo tank. Shortly thereafter, the vessel began to take a list to Starboard, which suggested that the internal structures of certain tanks were breached.

**OWNERS HAVE COOPERATED FULLY WITH NOBLE'S<br>EFFORTS TO INVESTIGATE**

7.     In his Declaration, Mr. Cohen suggests that Owners have been less than cooperative in allowing Noble to conduct its investigations into the circumstances surrounding the incident. As will be explained below, nothing could be further from the truth. Owners permitted Noble's surveyors to conduct all inspections and testing which they have requested, subject only to restrictions imposed by the United States Coast Guard. Moreover, we have provided the documents which their own surveyors identified as those necessary to conduct meaningful visual inspections onboard, and have now completed copying the vast majority of the balance of the documents which they have requested. Finally, Mr. Cohen is correct that we did not permit the multitude of surveyors onboard to interview the crew, but fails to point out that we offered to recommend that Owners permit those interviews if Mr. Cohen would forego the current application for depositions. His rejection of that offer clearly shows that he is not interested in finding out what happened. Instead, he is trying to circumvent the arbitration agreement by obtaining Federal Court discovery procedures to gain a tactical advantage.

8.     Soon after the incident, Owners received requests from surveyors representing various parties to conduct inspections onboard the M/V SICHEM DEFIANCE.

9.     After obtaining approval from Owners, I personally began making arrangements to permit access to the vessel to the surveyors for various parties including Noble. Cargo from the damaged tanks had to be transferred to sound tanks onboard the vessel so that the damaged tanks could be gas-freed for inspection and subsequent repair. This entire operation was carried out pursuant to the authority of , and under the direction of the United States Coast Guard.

10.     Once the Coast Guard granted permission, I arranged for the various surveyors to board the vessel at anchorage for purposes of conducting inspections.

11.     I arranged the necessary clearances, and met with the surveyors for the various parties (including three surveyors representing Noble) onboard the vessel on January 20, 2010. We held a preliminary meeting at which time I explained how I intended to proceed with respect to any requests for documents. I explained that given the limited copying capabilities onboard the vessel, it was my intention to deal with document requests in two phases. I explained that I understood that there were two subsets of documents which they were requesting, i.e., those documents which they would eventually need for purposes of completing their investigation, and second, those documents which were necessary for them to conduct meaningful physical inspections of the tanks onboard the vessel. I advised that my intention was to initially provide with the documents which they believed were necessary to conclude their physical inspections, and subsequently deal with what I anticipated to be a much larger list of requested documents. During that meeting the surveyors (including those representing Noble) advised that they needed the following documents for purposes of conducting their physical inspections onboard:

    a.     SMS System Pre-Transfer Checklist;
    b.     Cargo Plan;

c.      Hourly Rate/Loading Record;
d.      Max Loading Rates;
e.      Port Log;
f.      Drawings (including Tank Plans and Plans for PV
        Valves Venting System).

12.      While we were meeting with the surveyors on January 20, the U.S. Coast Guard decided that they would not permit any sampling or gauging of the tanks, and wanted all "non-essential" personnel to leave the vessel. As a result, all surveyors left the vessel with the understanding that we would advise them when the Coast Guard was prepared to allow the surveys and inspections to go forward.

13.      After the Coast Guard gave their approval, I sent an e-mail to the various surveyors on January 21, 2010 inviting them to come onboard the vessel on Friday, January 22, 1010 to continue with the inspection process. That e-mail set out the guidelines for the inspections onboard, and also enclosed copies of the documents, which had been requested the previous day:

a.      Ship's Pariculars;
b.      Ship-Shore Safety Checklist;
c.      Cargo Stowage Plan;
d.      Hourly Rate Record;
e.      Port Log;
f.      Ullage Sheet showing current location of the cargo onboard.

I also pointed out that while impractical to make copies of the vessel plans, we would make every effort to have the plans available for their review prior to inspection. A copy of that e-mail and the attached documents is attached as **Exhibit 2**.

14.      I met with the surveyors for all parties (including three surveyors representing Noble) onboard the vessel at 1000 on Friday, January 22, 2010. I suggested that the surveyors create a joint list of the documents which they believed they needed to conclude their

investigations. At the same time, I again asked the surveyors if there were additional documents which they needed in the short run to make their tank inspections meaningful. We provided photographs taken of the damage by Owners' representatives with commentary relating to the damage, Owners preliminary surveyor report showing the extent of the damage at various locations, and a copy of the Final Drawing for the PV valves. In addition, we provided copies of tank plans for the surveyors' use during their inspections. Indeed, those plans have been incorporated in the field survey Noble's surveyors, attached as Exhibit B to Mr. Cohen's Declaration. ***All surveyors (including those representing Noble) agreed that they had all documents which were necessary to conduct their inspections onboard.*** The suggestion in Mr. Cohen's Declaration at page 6 that the surveyors had an insufficient number of documents to "evaluate what they were seeing" is simply incorrect. They were given everything which they requested.

15.     Once the documents were provided and the surveyors had an opportunity to review, they were permitted access to those cargo tanks and ballast tanks which were gas-free. The surveyors were allowed as much time as they wanted in each tank, and the inspections ended at approximately 2000 (8:00 p.m.).

16.     We again allowed the surveyors back onboard the vessel on Sunday, January 24, 2010 to conduct an inspection of the damage on the deck of the vessel.

17.     Noble's surveyors had previously requested that we conduct a test of the pressure monitoring and alarm system on the tanks in question. Owners arranged for a technician to come from Japan to carry out that testing. The technician arrived onboard the vessel on January 24, 2010 and Noble's surveyors were permitted to ask questions of the technician, and monitor the testing process. The testing was not concluded on January 24, 2010 and was completed on

January 27, 2010, at which time Owners again permitted Noble's surveyors to attend onboard the vessel to witness the testing. At the conclusion of the tests, we provided Noble's surveyors with copies of the test results verifying that the system was working properly.

18. On Sunday, January 31, 2010, the M/V SICHEM DEFIANCE shifted from anchorage to the shipyard in Bayonne, New Jersey for repairs. On January 31, 2010, I again invited the surveyors to come onboard the vessel to inspect the tanks which were not previously available. Noble's surveyors accepted the invitation, and also asked that they be permitted to re-inspect all of the tanks to which they had already been provided full and complete access. We accommodated that request, and Noble's surveyors were again permitted to inspect all available tanks on Monday, February 1, 2010.

19. Finally, Noble's surveyors are currently onboard to continue with tank inspections, witness removal of the PV valves for testing pursuant to an agreed protocol, and witness a test of the high level alarm system.

20. In sum, and notwithstanding Noble's suggestion that Owners are hindering their efforts to investigate the casualty, owners have permitted every test and inspection that they have requested and provided the documents necessary to conduct their inspections as follows:

      a. We provided Noble's surveyors with all the documents which they identified as necessary to conduct their physical inspections onboard.

      b. We have now copied the vast majority of the balance of the documents which they have requested and those documents are ready to be taken ashore, copied and distributed.

      c. We have allowed Noble's surveyors to enter, inspect and photograph all tanks onboard the vessel which they have requested to see. There are still a few tanks which need to be inspected, but have not been completed because they were not previously gas-free so as to safely allow access. Noble's surveyors are currently onboard continuing with those tank inspections. In fact, despite being

permitted to inspect the tanks for as long as they wanted on January 22, Noble's surveyors asked to re-inspect all of the tanks. That re-inspection was permitted to go forward on February 1 and continues today.

        d.     Noble has asked that we test the pressure monitoring and alarm system for the vessel's cargo tanks. Owners flew in a technician from Japan to conduct those tests. Noble's surveyors were permitted to witness those tests, and were provided with a copy of the technician's report confirming that the equipment was working properly.

        e.     Noble's surveyors have asked that we allow them to inspect the vessel's PV valves. We agreed, and in conjunction with the Coast Guard, an agreement has been reached whereby the PV valves are currently being removed from the vessel (with Noble's surveyors in attendance) and brought to a Metallurgical Lab in Manhattan for testing pursuant to an agreed testing protocol. Noble will be allowed to witness that testing.

        f.     Noble has asked that they be permitted to test the high level alarms in tanks 3 Port and 3 Starboard. Those tests are being carried out today.

I personally arranged for the access for Noble's surveyors and witnessed all of the inspections and testing with the exception of the inspections which are going forward today. Attached as **Exhibit 3** are various e-mails which I sent to Noble's surveyors coordinating their access to the various inspections.

## REQUESTED DEPOSITIONS

21.    Mr. Cohen did advise on January 27, 2010 that he wanted to take depositions of the vessel's crew. When he made the request, I immediately advised that it was my position that depositions were not available in a case such as this where the parties have agreed to submit all disputes to arbitration. I advised Mr. Cohen that I would raise the issue with my clients, but did not know whether they would agree.

22.    We discussed the issue of depositions on Tuesday, February 2, 2010 at which time I repeated my position that Federal Court discovery procedures, including depositions, was

not available in an arbitration context. Nevertheless, I advised that if Noble was prepared to narrow the list to two or three witnesses, I would recommend that Owners agree. Mr. Cohen advised that he was not prepared to compromise, and Noble was insisting on as many depositions as they felt were necessary. During that same conversation, I suggested that I would recommend crew interviews in lieu of depositions, but again, Mr. Cohen declined.

## NOBLE HAS NO COMPELLING FOR DEPOSITIONS

23. In paragraph 10 of his Declaration, counsel for Noble suggests that there is a need for information which would be lost if the depositions are not taken. As explained in this Declaration, Noble has already been provided with full and complete access to the vessel and has or will soon have all records necessary to complete its investigation. Those records include the contemporaneous records prepared by the crew with respect to what occurred.

24. By agreeing to arbitration, Noble agreed that arbitrators would decide the extent of discovery which is necessary. Counsel for Noble is well aware that arbitrators routinely issue orders regarding production of documents, issue witness subpoenas, and otherwise preside over what discovery is required/allowed. The order which Noble is now requesting is an inappropriate intrusion into the authority conferred on the arbitrators by virtue of the arbitration agreement.

25. Section 7 of the Federal Arbitration Act specifically provides arbitrators with the power to compel witness attendance. To the extent that the arbitrators order witnesses to testify in this case, Owners will be forced to comply with that order, or deal with the consequences in the context of the arbitration. Furthermore, the suggestion that they need the depositions is belied by the fact that arbitrations are routinely decided in New York without the benefit of depositions.

26. In sum, Owners have provided Noble with full and complete access to everything that they have requested with the exception of access to the crew. I offered to recommend that Owners permit Noble's surveyors to interview the crew in lieu of depositions, but Noble declined. Owners submit that Noble is not entitled to depositions provided in the Federal Rules of Civil Procedure. Noble agreed to a dispute resolution methodology (arbitration) which does not provide for depositions, and Noble should not be able to sidestep that agreement and take advantage of Federal Court discovery procedures to gain tactical advantage. Arbitration has advantages and disadvantages. On the one hand, it has the advantage of being expedient and less expensive, but the downside is that full discovery is not available. Noble cannot have it both ways. Having elected to arbitrate, they must take the bad (limited discovery) with the good (expedient and inexpensive resolution of disputes).

_____
Wayne D. Meehan

# Exhibit 1

*Meehan Declaration*

# PORT LOG

m/t __PICHEM DEFIANCE__    Port of __NEW YORK, USA__

Dated __09 JAN. 10__    Berth __ORANGEBND BAY ANCHORAGE__

| DATE | DESCRIPTION |
|---|---|
| 1600 | C.O.S.P / N.O.R. TENDERED |
| 1900 | LET GOO PORT ANCHOR / N.O.R RE-TENDERED |
| 1950 | PILOT OFF / GANGWAY DOWN |
| 1955 | AGENT, C. SURVEYOR ONBOARD |
| 1940 - 2000 | BARGE "FREEDOM" ALONGSIDE |
| 2010 | COMMENCE TANK INSPECTION / CHECKED ALL P.V VALVE |
| 2035 | COMPLETED TANK INSPECTION |
| 2115 | AGENT ONBOARD |
| 2210 | COMPLETED KEY SAFETY / SHIP TO SHIP MEETING. |
| 2220 | AGENT OFF |
| 2348 | HOSE CONNECTED 1×8" |
| JANUARY 2010 | |
| 0010 | COMMENCE CARGO LOADING. |
| 0030 | CARGO SURVEYOR OFF |
| (0650) 0730 | VSL. REQUEST TO DISCH. BARGE "FREEDOM" STOP DISCH. |
| 0735 | COMM. SOUNDING OF BALLAST TK |
| 0740 | REQUEST TO BARBARA PER TO INFORM THE SURVEYOR |
| 0835 | INFORM BARGE "FREEDOM" TO DISCONNECT THE HOSE |
| 0855 | U.S. COMOT GUARD CHECKING VSL. SURROUNDING. |
| 0900 | MASTER ANNOUNCED THAT ALL CREW MUSTERED IN |
|  | THE BRIDGE EXCEPT 5 CREW ON BOCK / IN C.C.R. |
| 0905 | HOSE DISCONNECTED |
| 0920 | BARGE FREEDOM CAST OFF |
| 0930 | NEW YORK POLICE CHECKING VSL. SURROUNDING |
| 1040 | U.S.C.G FIRE FIGHTING VSL. ALONGSIDE (STBD. MIDSHIP) |
| 1046 | VSL. ADVISED TO CAST OFF FIRE FIGHTING VSL, WE HAVE FLAMMABLE CARGO. |

# PORT LOG

m/T YICHEM DEFIANCE    Port of NEW YORK

Dated 10 JAN. 10    Berth GRAVESEND BAY ANCHORAGE

| DATE | DESCRIPTION |
|------|-------------|
| 1110 | 3 U.S.C.G FIRE FIGHTER ONBOARD |
| 1140 | 1 U.S.C.G FIRE FIGHTER ONBOARD. |
| 1205 | 4 U.S.C.G ONBOARD |
| 1822 | P & I SURVEYOR ONBOARD |
| 1845 | 3 U.S.C.G DISEMBARKED |
| 1845 | 2 U.S.C.G. ONBOARD |
| 1910 | PORT CAPTAIN GITZEN CHEMICAL ONBOARD |
| 2010 | F.D.N.Y 6 PERSON OFF |
| 2010 | F.D.N.Y 6 PERSON OFF |
| 2055 | COMM TK ULLAGING & SAMPLING |
| 2100 | MARINE FIRE DEPT. COMM. BALLAST TK INSPECTION |
| 2205 | COMPLETED TANK ULLAGING / SAMPLING |
| 2210 | MARINE FIRE DEPT. COMPLETED BALLAST TK INSPECTION |
| 2355 | C. SCANLON, MARINE CHEMIST, REP. SALVAGE OFF |
| 11 JAN. 10 | |
| 0010 | 2/2 NEW CARGO TANK TOP HOLE CEMENTED (NEW HOLE FD |
| 0050 | 3 EMS PERSONNEL & 2 RESCUE PERSONNEL OFF |
| 0135 | PARAMEDIC ONBOARD (FOR CREW DRUG TEST) |
| 0200 | 2 USCG ONBOARD (GOING ON DUTY ONBOARD) |
| 0220 | 2 USCG OFF ('OFF DUTY) |
| 0320 | 6 USCG FIRE DEPT. OFF |
| 0420 | 6 USCG FIRE DEPT ONBOARD |
| 0525 | PARAMEDIC OFF |
| 0835 | 2 U.S.C. ON DUTY |
| 0840 | 2 U.S.C.G OFF |
| 0930 | CHARTERER REP. ONBOARD |

# Exhibit 2

*Meehan Declaration*

## MEEHAN, WAYNE

| | |
|---|---|
| **From:** | MEEHAN, WAYNE |
| **Sent:** | Thursday, January 21, 2010 1:36 PM |
| **To:** | 'Jeff Sayers'; mseymour@imcmarine.com; glong120@aol.com; Charlie Ellwanger; PPower; w.schonborn@loc-group.com; 'info@crcco.com'; 'Kirk Lyons'; 'gert.josefsson@surveyassociation.com'; Robert Hogg; joc@mtdusa.com |
| **Subject:** | RE: Sichem Defiance - tank inspections January 22, 2010, Gravesend Bay |
| **Attachments:** | Ship's Pariculars.pdf; Ship-Shore Safety Checklist.pdf; Cargo Stowage Plan.pdf; Hourly Rate Record - loading through 0700.pdf; Port Log.pdf; 20100121133451611.pdf |

As you know from our attendance onboard the vessel yesterday, the Coast Guard refused to allow any tank gauging/sampling and refused to permit access to the vessel's tanks for inspection. We have learned that the Coast Guard has now cleared the vessel and as a result, the tank gauging/sampling and tank inspections may go forward. The cargo sampling and gauging will go forward today.

As far as the tank surveys are concerned, we are in the process of verifying that the vessel is clear for those inspections as well. We will advise later today, but we have tentatively scheduled the commencement of the joint survey for noon on Friday, January 22, 2010. I suggest that all parties arrange to arrive onboard the vessel at noon. After a brief meeting to discuss the procedure, our intention is to permit all parties to view the PV valves in place and then proceed with the tank inspections. As you can appreciate, there will be limits regarding the number of people we can allow in the tanks at the same time, and we will work out an order/schedule. The inspection must be carried out in a controlled manner and access is being granted with the understanding that all surveyors will remain together and not "wander" around the ship, and with the further understanding that there will be no crew interviews without our specific permission.

As per our discussions onboard, attached are the following documents to facilitate your inspections onboard:

1.  Ship's Particulars;
2.  Ship-Shore Safety Checklist;
3.  Cargo Stowage Plan;
4.  Hourly Rate Record;
5.  Port Log;
6.  Ullage sheets showing current location of cargo onboard;

You have also asked for certain plans for the vessel. As you can appreciate, copying the plans is difficult from a practical standpoint, but we will make every effort to have plans available for your review prior to the inspection. Given the number of people involved, we must ask that you coordinate any requests for additional documentation through our office.

Also, we will have to arrange for clearance for those attending, and we ask that all parties intending to participate respond to this email identifying the individual who will participate and the specific party/interest they represent.

Best regards,

Wayne

**WAYNE D. MEEHAN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Cell: 917-744-6562
E-mail: meehan@freehill.com



# EITZEN GROUP
## Est. 1883

## SHIP'S PARTICULARS

| | | | |
|---|---|---|---|
| **NAME :** | **M.T. SICHEM DEFIANCE** | *CALL SIGN* | V7JQ3 |
| **EMAIL :** | sichem.defiance@vsl.ems-asa.com | *CLASS 1B  ICE STRENGTHENING* | |
| **Mob   :** | **+1 203 722 0624** | | |
| **SAT C TLX :** | **453 84 6 878 ABB SDEF** | *MINI M :* **+870 761115 894** | |
| **SAT B TEL :** | **+870 353 899 189 / 190** | | |
| **SAT B FAX :** | **+870 353 899 191** | | |

**OWNER :** EITZEN CHEMICAL (Singapore) Pte. Ltd.   One Temasek Avenue #35-05 Millenia Tower, Singapore 039192

**OPERATORS :** EMS Ship Management (India) Pvt. Ltd.
R-102, Remi Bizcourt, Shah Industrial Estate, Vera Desai Rd., Andheri (West), Mumbai - 400053 India
TEL : +91 22 6704 1000          FAX : +91 22 6704 1011          EMAIL : shipmanagement.in@ems-asa.com

**CHARTERERS :** Eitzen Chemical (USA) LLC
One Gorham Island Westport CT 06880 USA
TEL : +1 203 341 3620          FAX : +1 203 341 3610          EMAIL : oprusa@eitzen-chemical.com

**CREWING MANAGEMENT :** EMS Ship Management  Philippines Inc
2/F Harbor Center Bldg. Railroad & Chicago St. South Harbor Port Area Manila
Tel: +632 3159 529          Mob:+63 917 513 9709          Email:crewmanagement@ph.ems-asa.com

| | | | |
|---|---|---|---|
| **FLAG :** | Marshall Islands | *PORT OF REGISTRY :* | Majuro |
| **OFFICIAL NO.** | 2559 | *IMO ID NO. :* | 9244374 |
| **MMSI ID NO. :** | 538 002 559 | *RADIO ACC. COMPANY :* | Marlink  BE02 |
| **VESSEL TYPE :** | Oil / Chemical Tanker | | |
| **CLASS SOCIETY :** | NKK | *CLASS ID NO. :* | 010768 |
| **BUILDER :** | Fukuoka Shipbuilding Co. Ltd. Japan | | |
| **DELIVERED :** | 7-Mar-2001 | *KEEL LAID :* | 5-Aug-2000 |
| **EX NAME :** | Songa Defiance | *DATE NAME CHANGED :* | 15-Jan-2007 |
| **LAST DRY-DOCK :** | Mar-2006 | | |
| **L.O.A. :** | 135.325m | *PARALLEL BODY AT BALLAST :* | 52.40m |
| **L.B.P.** | 127.70m | *DISTANCE BRIDGE - BOW :* | 108.575m |
| **EXTREME BEAM :** | | *DISTANCE BRIDGE - STERN :* | 29.65m |
| **MOULDED BEAM :** | 22.80m | *DISTANCE BRIDGE - MANIFOLD :* | 39.85m |
| **MOULDED DEPTH :** | 12.50m | *DISTANCE MANIFOLD - BOW :* | 65.825m |
| **DIST. KEEL-MAST :** | 35.725m | *DISTANCE MANIFOLD - STERN :* | 69.50m |

| TONNAGES | INTERNATIONAL | PANAMA | SUEZ |
|---|---|---|---|
| GT | 9,900 | 10463 | 10463.33 |
| NT | 5,335 | 8351 | 8991.51 |
| CANAL ID NO. | N/A | 3001311 | 1H0-0046TS |

| LOADLINE INFORMATION | Freeboard | Draught | Deadweight | Displacement |
|---|---|---|---|---|
| TROPICAL | 2.865 m | 9.665 m | 17395.84 tonnes | 22325.45 tonnes |
| SUMMER | 2.865 m | 9.665 m | 17395.84 tonnes | 22325.45 tonnes |
| WINTER | 3.066 m | 9.464 m | 16861.64 tonnes | 21791.22 tonnes |
| FRESH WATER | 2.656 m | 9.874 m | 17395.73 tonnes | 22325.34 tonnes |
| TROPICAL FRESH WATER : | 2.656 m | 9.874 m | 17395.73 tonnes | 22325.34 tonnes |
| FRESH WATER ALLOWANCE | 209 mm | *TONNE PER cm IMMERSION:* | 26.64 mt | |
| LIGHTSHIP | 4929.61 mt | | | |

| | | | |
|---|---|---|---|
| **CARGO TANKS CAPACITY (98 %)** | 17423.90 m³ | *MAX. CARGO SEGREGATION :* | 20 |
| **CARGO TANKS COATING** | Stainless Steel | | |
| **BALLAST TANKS CAPACITY** | 5373.96 m³ | | |
| **BUNKERS - HFO CAPACITY (100%)** | 945.85 m³ | *MDO CAPACITY :* 126.58 m³ | |
| **BUNKERS DAILY CONSUM. – HFO** | 22.90 tonnes | *DAILY CONSUM. – MDO :* 2.0 tonnes | |

| | | | |
|---|---|---|---|
| **MAIN ENGINE** | HITACHI MAN B&W 6L42MC | *HULL NO. :* F-1213 | |
| **GENERATORS** | Yanmar 6N165LSN | *BOW THRUSTER :* 872 BHP / 650 KW | |
| **CARGO PUMPS CAPACITY** | 10 x 300m³/hr,  10 x 200 m³/hr | | |
| **BALLAST PUMPS CAPACITY** | 1 x 400 m³/hr | | |

# SHIP/SHORE SAFETY CHECKLIST

Ship's Name: <u>M/T SICHEM DEFIANCE</u>

Berth: STAPLETON/BAY RIDGE FLATS, ANCHORAGE

Port: NEW YORK

Date of Arrival: 09 – 01 - 2010

Time of Arrival:

## INSTRUCTIONS FOR COMPLETION

The safety of operations requires that all questions should be answered affirmatively by clearly ticking the appropriate box. If an affirmative answer is not possible, the reason should be given and agreement reached upon appropriate precautions to be taken between the ship and the terminal. Where any question is considered to be not applicable, then a note to that effect should be inserted in the remarks column.

A box in the columns 'ship' and 'terminal' indicates that checks should be carried out by the party concerned.

The presence of the letters A, P or R in the column 'Code' indicates the following:

**A** – any procedures and agreements should be in writing in the remarks column of this Check List or other mutually acceptable form. In either case, the signature of both parties should be required.

**P** – in the case of a negative answer, the operation should not be carried out without the permission of the Port Authority.

**R** – indicates items to be re-checked at intervals not exceeding that agreed in the declaration.

Part 'A' – Bulk Liquid General – Physical Checks

| | Bulk Liquid - General | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|---|
| 1. | There is safe access between the ship and shore. | ✓ | ✓ | R | |
| 2. | The ship is securely moored. | ✓ | ✓ | R | |
| 3. | The agreed ship/shore communication system is operative. | ✓ | ✓ | A R | System:<br>Backup System: |
| 4. | Emergency towing-off pennants are correctly rigged and positioned. | . | ✓ | R | |
| 5. | The ship's fire hoses and fire-fighting equipment are positioned and ready for immediate use. | ✓ | | R | |
| 6. | The terminal's fire-fighting equipment is positioned and ready for immediate use. | | | R | |
| 7. | The ship's cargo and bunker hoses, pipelines and manifolds are in good condition, properly rigged and appropriate for the service intended. | ✓ | | | |
| 8. | The terminal's cargo and bunker hoses or arms are in good condition, properly rigged and appropriate for the service intended. | | ✓ | | |
| 9. | The cargo transfer system is sufficiently isolated and drained to allow safe removal of blank flanges prior to connection. | ✓ | ✓ | | |
| 10. | Scuppers and save-alls on board are effectively plugged and drip trays are in position and empty. | ✓ | | R | |
| 11. | Temporarily removed scupper plugs will be constantly monitored. | ✓ | | R | |
| 12. | Shore spill containment and sumps are correctly managed. | | ✓ | R | |
| 13. | The ship's unused cargo and bunker connections are properly secured with blank flanges fully bolted. | ✓ | | | |

# SHIP/SHORE SAFETY CHECKLIST

| Bulk Liquid - General | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 14. The terminal's unused cargo and bunker connections are properly secured with blank flanges fully bolted. | | ✓ | | |
| 15. All cargo, ballast and bunker tanks lids are closed. | ✓ | | | |
| 16. Sea and overboard discharge valves, when not in use, are closed and visibly secured. | ✓ | | | |
| 17. All external doors, ports and windows in the accommodation, stores and machinery spaces are closed. Engine room vents may be open. | ✓ | | R | |
| 18. The ship's emergency fire conform plans are located externally. | ✓ | | | Location: |

If the ship is fitted, or is required to be fitted, with an inert gas system (IGS), the following points should be physically checked:

| Inert Gas System | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 19. Fixed IGS pressure and oxygen content recorders are working. | NA | | R | |
| 20. All cargo tank atmosphere are at positive pressure with oxygen content of 8% or less by volume. | NA | | P R | |

Part 'B' – Bulk Liquid General – Verbal Verification

| Bulk Liquid - General | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 21. The ship is ready to move under its own power. | ✓ | | P R | |
| 22. There is an effective deck watch in attendance on board and adequate supervision of operations on the ship and in the terminal. | ✓ | ✓ | R | |
| 23. There are sufficient personnel on board and ashore to deal with an emergency. | ✓ | | R | |
| 24. The procedures for cargo, bunker and ballast handling have been agreed. | ✓ | ✓ | A R | |
| 25. The emergency signal and shutdown procedure to be used by the ship and shore have been explained and understood. | ✓ | ✓ | A | |
| 26. Material Safety Data Sheet (MSDS) for the cargo transfer have been exchanged where requested. | | | P R | |
| 27. The hazards associated with toxic substances in the cargo being handled have been identified and understood. | ✓ | ✓ | | H2S Content: Benzene Content: |
| 28. An International Shore Fire Connection has been provided. | ✓ | ✓ | | |
| 29. The agreed tank venting system will be used. | ✓ | ✓ | A R | Method: P V |
| 30. The requirements for closed operations have been agreed. | ✓ | ✓ | R | |
| 31. The operation of the P/V system has been verified. | ✓ | | | |
| 32. Where a vapour return line is connected, operating parameters have been agreed. | NA | | A R | |

# SHIP/SHORE SAFETY CHECKLIST

| Bulk Liquid - General | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 33. Independent high level alarms, if fitted, are operational and have been tested. | ✓ | | A R | |
| 34. Adequate electrical insulating means are in place in the ship/shore connection. | | | A R | |
| 35. Shore lines are fitted with a non-return valve, or procedures to avoid back filling have been discussed. | | | P R | |
| 36. Smoking rooms have been identified and smoking requirements are being observed. | ✓ | | A R | Nominated smoking rooms: |
| 37. Naked light regulations are being observed. | ✓ | | A R | |
| 38. Ship/shore telephones, mobile phones and pager requirements are being observed. | ✓ | | A R | |
| 39. Hand torches (flashlights) are of an approved type. | ✓ | | | |
| 40. Fixed VHF/UHF transceivers and AIS equipment are on the correct power mode or switched off. | ✓ | | | |
| 41. Portable VHF/UHF transceivers are of an approved type. | ✓ | | | |
| 42. The ship's main radio transmitter aerials are earthed and radars are switched off. | ✓ | | | |
| 43. Electric cables to portable electrical equipment within the hazardous area are disconnected from power. | ✓ | | | |
| 44. Window type air conditioning units are disconnected. | NA | | | |
| 45. Positive pressure is being maintained inside the accommodation, and air conditioning intakes, which may permit the entry of cargo vapours, are closed. | ✓ | | | |
| 46. Measures have been taken to ensure sufficient mechanical ventilation in the pump room. | ✓ | | R | |
| 47. There is provision for an emergency escape. | ✓ | | | |
| 48. The maximum wind and swell criteria for operations have been agreed. | ✓ | | A | Stop cargo at: ▓▓ ᵏᵗˢ<br>Disconnect at: ▓▓ ᵏᵗˢ<br>Unberth at: ▓▓ |
| 49. Security protocols have been agreed between the Ship Security Officer and the Port Facility Security Officer, if appropriate. | ✓ | | A | |
| 50. Where appropriate, procedures have been agreed for receiving nitrogen supplied from shore, either for inerting or purging ship's tanks, or for line clearing into the ship. | NA | | A P | |

# SHIP/SHORE SAFETY CHECKLIST

If the ship is fitted, or is required to be fitted, with an inert gas system (IGS) the following statements should be addressed:

| Inert Gas System | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 51. The IGS is fully operational and in good working order. | NA | | P | |
| 52. Deck seals, or equivalent, are in good working order. | NA | | R | |
| 53. Liquid levels in pressure/vacuum breakers are correct. | NA | | R | |
| 54. The fixed and portable oxygen analysers have been calibrated and are working properly. | NA | | R | |
| 55. All the individual tank IG valves (if fitted) are correctly set and locked. | NA | | R | |
| 56. All personnel in charge of cargo operations are aware that, in the case of failure of the inert gas plant, discharge operations should cease and the terminal be advised. | NA | | | |

If the ship is fitted with a Crude Oil Washing (COW) system, and intends to crude oil wash, the following statements should be addressed:

| Crude Oil Washing | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 57. The Pre-Arrival COW check-list, as contained in the approved COW manual, has been satisfactorily completed. | NA | | | |
| 58. The COW check-lists for use before, during and after COW, as contained in the approved COW manual, are available and being used. | NA | | R | |

If the ship is planning to tank clean alongside, the following statements should be addressed:

| Tank Cleaning | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 59. Tank cleaning operations are planned during the ship's stay alongside the shore installation. | Yes/No | Yes/No | | |
| 60. If 'yes', the procedures and approvals for tank cleaning have been agreed. | | | | |
| 61. Permission has been granted for gas freeing operations. | Yes/No | Yes/No | | |

\* Delete Yes or No as appropriate

Part 'C' – Bulk Liquid Chemicals – Verbal Verification

| Bulk Liquid Chemicals | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|
| 1. Material Safety Data Sheets are available giving the necessary data for the safe handling of the cargo. | HO | HO | | |
| 2. A manufacturer's inhibition certificate, where applicable, has been provided. | HA | NA | P | |

# SHIP/SHORE SAFETY CHECKLIST

| | Bulk Liquid Chemicals | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|---|
| 3. | Sufficient protective clothing and equipment (including self-contained breathing apparatus) is ready for immediate use and is suitable for the product being handled. | ✓ | ✓ | | |
| 4. | Countermeasures against accidental personal contact with the cargo have been agreed. | ✓ | ✓ | | |
| 5. | The cargo handling rate is compatible with automatic shutdown system, if in use. | ML | | A | |
| 6. | Cargo system gauges and alarms are correctly set and in good order. | ✓ | ✓ | | |
| 7. | Portable vapour detection instruments are readily available for the products being handled. | ✓ | | | |
| 8. | Information on fire-fighting media and procedures has been exchanged. | ✓ | ✓ | | |
| 9. | Transfer hoses are of suitable material, resistant to the action of the products being handled. | ✓ | ✓ | | |
| 10. | Cargo handling is being performed with the permanent installed pipeline system. | ✓ | ✓ | P | |
| 11. | Where appropriate, procedures have been agreed for receiving nitrogen supplied from shore, either for inerting or purging ship's tanks, or for line clearing into the ship. | ML | | A   P | |

# SHIP/SHORE SAFETY CHECKLIST

**Part 'D' – Bulk Liquefied Gases – Verbal Verification**

| | Bulk Liquefied Gases | Ship | Terminal | Code | Remarks |
|---|---|---|---|---|---|
| 1. | Material Safety Data Sheets are available giving the necessary data for the safe handling of the cargo. | NA | N A | | |
| 2. | A manufacturer's inhibition certificate, where applicable, has been provided. | NA | N A | P | |
| 3. | The water spray system is ready for immediate use. | NA | ✓ | | |
| 4. | There is sufficient suitable protective equipment (including self-contained breathing apparatus) and protective clothing ready for immediate use. | NA | ✓ | | |
| 5. | Hold and inter-barrier spaces are properly inerted or filled with dry air, as required. | NA | ▓▓▓ | | |
| 6. | All remote control valves are in working order. | NA | N A | | |
| 7. | The required cargo pumps and compressors are in good order, and the maximum working pressures have been agreed between ship and shore. | NA | ✓ | A | |
| 8. | Re-liquefaction or boil-off control equipment is in good order. | NA | N A | | |
| 9. | The gas detection equipment has been properly set for the cargo, is calibrated, has been tested and inspected and is in good order. | NA | N A | | |
| 10. | Cargo system gauges and alarms are correctly set and in good order. | NA | ✓ | | |
| 11. | Emergency shutdown systems have been tested and are working properly. | NA | ✓ | | |
| 12. | Ship and shore have informed each other of the closing rate of ESD valves, automatic valves or similar devices. | NA | ✓ | A | Ship:<br><br>Shore: |
| 13. | Information has been exchanged between ship and shore on the maximum/minimum temperatures/pressures of the cargo to be handled. | NA | ✓ | A | |
| 14. | Cargo tanks are protected against inadvertent overfilling at all times while any cargo operations are in progress. | NA | ▓▓▓ | | |
| 15. | The compressor room is properly ventilated, the electrical motor room is properly pressurised and the alarm system is working. | NA | ▓▓▓ | | |
| 16. | Cargo tank relief valves are set correctly and actual relief valve settings are clearly and visibly displayed. (Record setting below) | NA | ✓ | | |

| Tank No. 1 | ☐ | Tank No. 5 | ☐ | Tank No. 8 | ☐ |
|---|---|---|---|---|---|
| Tank No. 2 | ☐ | Tank No. 6 | ☐ | Tank No. 9 | ☐ |
| Tank No. 3 | ☐ | Tank No. 7 | ☐ | Tank No. 10 | ☐ |
| Tank No. 4 | ☐ | | | | |

# SHIP/SHORE SAFETY CHECKLIST

| | Additional checks required by the Company | Ship | Remarks |
|---|---|---|---|
| 1. | Has the vessel received a copy of Port and Terminal regulations - CDI - 5.1.3. | ✓ | ✓ |
| 2. | Has a safety & security notice been posted at the shore end of the ship-shore access, where possible - VIQ 5.23. | ✓ | ✓ |
| 3. | Are Oxygen and Acetylene cylinder (located inside and outside machinery spaces) valves fitted with Flash Back Arrestors / valves closed / pipework disconnected - VIQ - (5.40 - 5.42). | ✓ | |
| 4. | Has a Lifebuoy with a buoyant line been placed in vicinity of the Gangway-VIQ -5.77 | ✓ | |
| 5. | Are Vessel's Off Shore Manifolds being regularly monitored by Ship Staff - to be included as "R" Item. - VIQ - 8.71 | ✓ | ✓ |

**Declaration:**

We, the undersigned, have checked the above items in Part A and B and where appropriate Part C and D, in accordance with the instructions, and have satisfied ourselves that the entries we have made are correct to the best of our knowledge.

We have also made arrangements to carry out repetitive checks as necessary and agreed that those items with code 'R' in the check-list should be re-checked at intervals not exceeding _____ hours.

If to our knowledge the status of any item changes, we will immediately inform the other party.

| For Ship | | For Shore | |
|---|---|---|---|
| Name | A. NARAL | Name | Danny Tallato |
| Rank | CH OFF | Rank | Pic |
| Signature | fmral | Signature | Danny Tellat |
| Date | 09/01/10 | Date | 01-09-10 |
| Time | 2155 | Time | 2200 |

**Record of repetitive checks:**

| Date | Time | | Rank | Signature |
|---|---|---|---|---|
| 09-01-10 | 2210 HR | Items with the letter "R" have been checked and found in order | 3/0 | Hch |
| 10-01-10 | 0100 HR | Items with the letter "R" have been checked and found in order | 2/0 | JH |
| 10-01-10 | 0300 HR | Items with the letter "R" have been checked and found in order | 2/0 | JH |
| 10-01-10 | 0500 HR | Items with the letter "R" have been checked and found in order | 2/0 | JH |
| 10-01-10 | 0700 HR | Items with the letter "R" have been checked and found in order | 3/0 | Hch |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |
| | | Items with the letter "R" have been checked and found in order | | |

# STOWAGE PLAN (CARGO PLAN – PART C)

Vessel Name: M/T SICHEM DEFIANCE

Voyage No: 056

Port: NEW YORK

Date: 09 JAN. 2010

| Total Tank-Capacity M³ (100%) | Stowage Tank-no. | Cargo-Grade | Chartere r | DENSITY IN VAC | L/Temp. (°C) | Cargo quantity (%) | Cargo quantity (m³) | Cargo quantity (m/t) | Load Port | Discharge Port | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1147.611 | 2P | ETHANOL | Stanports | 0.7904 | 20 | 87.8 | 1008.1 | 800 | NEW YORK | KINGSTON | |
| 1147.713 | 2S | ETHANOL | Stanports | 0.7904 | 20 | 87.8 | 1008.1 | 800 | NEW YORK | KINGSTON | |
| 1227.376 | 3P | ETHANOL | Stanports | 0.7904 | 20 | 87.3 | 1071.1 | 850 | NEW YORK | KINGSTON | |
| 1226.772 | 3S | ETHANOL | Stanports | 0.7904 | 20 | 87.3 | 1071.1 | 850 | NEW YORK | KINGSTON | |
| 1231.607 | 5P | ETHANOL | Stanports | 0.7904 | 20 | 92.1 | 1134.1 | 900 | NEW YORK | KINGSTON | |
| 1232.103 | 5S | ETHANOL | Stanports | 0.7904 | 20 | 81.1 | 1008.1 | 800 | NEW YORK | KINGSTON | |
| 1230.414 | 7P | ETHANOL | Stanports | 0.7904 | 20 | 87.0 | 1071.1 | 850 | NEW YORK | KINGSTON | |
| 1229.973 | 7S | ETHANOL | Stanports | 0.7904 | 20 | 87.1 | 1071.1 | 850 | NEW YORK | KINGSTON | |
| 1160.538 | 9S | ETHANOL | Stanports | 0.7904 | 20 | 86.9 | 1008.1 | 800 | NEW YORK | KINGSTON | |
| | | | | | | | | | | | |
| 819.433 | 1P | LAB | CEPSA | 0.8595 | 30 | 89.3 | 731.4 | 625 | BECANCOUR | ALTAMIRA | |
| 819.579 | 1S | LAB | CEPSA | 0.8595 | 30 | 89.2 | 731.4 | 625 | BECANCOUR | ALTAMIRA | |
| 414.745 | 10S | LAB | CEPSA | 0.8595 | 30 | 70.5 | 292.6 | 250 | BECANCOUR | ALTAMIRA | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Chief Officer

Master

Terminal Representative

EMS Ship Management

Note:
Duly completed form, for each cargo operation, shall be maintained on board by the Chief Officer.
Rev. 00; Date of Issue: 2007/10/15
SQM – 5.001, Appendix 32 – Stowage Plan (Cargo Plan-Part C)

# HOURLY RATE RECORD

| Vessel: | SICHEM DEFIANCE | Port: | NEW YORK | Cargo: | ETHANOL | Total Qty:MT | 7,500 | Date: | 09-Jan-10 |
|---|---|---|---|---|---|---|---|---|---|
| Terminal: | GRAVESEND BAY ANCHORAGE | Commenced: | 0010 / 10-01-10 | Completed: | | Total Qty: M³ | | Voyage: | 56/09 |

| TANK | 0100H Ullage | 0100H Cu.Mtrs | 0200H Ullage | 0200H Cu.Mtrs | 0300H Ullage | 0300H Cu.Mtrs | 0400H Ullage | 0400H Cu.Mtrs | 0500H Ullage | 0500H Cu.Mtrs | 0600H Ullage | 0600H Cu.Mtrs | 0700H Ullage | 0700H Cu.Mtrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2S | 9.41 | 216 | 6.74 | 490 | 4.56 | 726 | 3.52 | 839 | 3.52 | 839 | 3.52 | 839 | 3.52 | 839 |
| 2P | 9.49 | 208 | 6.92 | 472 | 4.6 | 722 | 3.54 | 838 | 4.6 | 838 | 4.6 | 838 | 4.6 | 838 |
| 3S | | | | | | | 10.72 | 111 | 8.98 | 302 | 7.11 | 511 | 4.56 | 796 |
| 3P | | | | | | | 9.47 | 280 | 7.94 | 419 | 6.67 | 563 | 4.38 | 818 |
| 5S | | | | | | | 11.54 | 12 | 9.38 | 263 | 7.75 | 445 | 7.72 | 448 |
| 5P | | | | | | | 11.54 | 12 | 9.68 | 227 | 8.32 | 379 | 8.16 | 397 |
| 7S | 10.19 | 174 | 7.7 | 452 | 5.24 | 727 | 3.64 | 905 | 3.64 | 905 | 3.84 | 905 | 3.64 | 905 |
| 7P | 9.9 | 205 | 7.41 | 484 | 5.08 | 745 | 3.69 | 899 | 3.69 | 899 | 3.69 | 899 | 3.69 | 899 |
| 9S | 9.48 | 202 | 6.86 | 478 | 4.91 | 694 | 3.53 | 947 | 3.53 | 847 | 3.53 | 847 | 3.53 | 847 |
| GM | 4.27 | | 4.07 | | 3.69 | | 3.41 | | 3.5 | | 3.43 | | | |
| Q.O.B. (m³) | | 1005 | | 2376 | | 3614 | | 4813 | | 5539 | | 6226 | | 6787 |
| Q.O.B. (mt) | | 811 | | 1919 | | 2918 | | 3866 | | 4472 | | 5027 | | 5480 |
| Initial Q.O.B. (mt) | | | | | | | | | | | | | | |
| QTY/Load. (mt) - Ship | | 811 | | 1919 | | 2918 | | 3886 | | 4472 | | 5027 | | 5480 |
| QTY/load. (mt) - Shore | | | | | | | | | | | | | | |
| Ship/Shore Difference (mt) | | | | | | | | | | | | | | |
| RATE (mt/h) - Ship | | 811 | | 1108 | | 999 | | 968 | | 586 | | 556 | | 453 |
| ETC | | | | 0710H | | 0735H | | 0745H | | 1010H | | 1030H | | |
| SF (%) Max | F=46 | 60.90% | F=46 | 53.60% | F=46 | 49.50% | F=38 | 48.00% | F=38 | 45.70% | F=38 | 43.80% | F=38 | 44.20% |
| BM (%) Max | F=99 | 89.10% | F=101 | 84.3% | F=103 | 82.2% | F=101 | 80.5% | F=96 | 68.4% | F=93 | 60.2% | F=93 | 59.2% |
| MANIFOLD PRESS | | | | | | | | | | | | | | |
| REMARKS ( DRAFTS ) | F=4.25 / A=6.02 | | F=4.18 / A=6.6 | | F=4.63 / A=6.94 | | F=4.81 / A=7.03 | | F=5.22 / A=7.38 | | F-5.22 / A=7.38 | | F=5.68 / A= 7.26 | |

SQM 5.061 - Appendix1 - Hourly rate Record (Chem)

EMS Ship Management

Rev. 01; Date of Issue: 01 Feb 2009

CHEM DEFIANCE          Port of NEW YORK, USA

09 JAN 10          Berth GRAVESEND BAY ANCHORAGE

| DATE | DESCRIPTION |
|------|-------------|
| | E.O.S.P / N.O.R. TENDERED |
| | LET GO PORT ANCHOR / N.O.R RE-TEN [...] |
| | PILOT OFF / GANGWAY DOWN |
| | AGENT & SURVEYOR ONBOARD |
| 2000 | BARGE "FREEDOM" ALONGSIDE |
| | COMMENCE TANK INSPECTION |
| | COMPLETED TANK INSPECTION |
| | AGENT ONBOARD |
| | COMPLETED KEY SAFETY / SHIP TO SHIP [...] |
| | AGENT OFF |
| | HOSE CONNECTED 1X8" |
| | |
| MAY 2010 | |
| | COMMENCE CARGO LOADING. |
| | CARGO SURVEY ON OFF |
| 10) 0730 | VSL REQUEST TO DISCH. BARGE "FREEDOM" STOP DISCH. |
| | COMM. SOUNDING OF BALLAST TK |
| | REQUEST TO BARGE PER TO INFORM [...] |
| | INFORM BARGE "FREEDOM" TO DISCONN. THE HOSE |
| | U.S. COAST GUARD CHECKING VSL SOUROUNDING. |
| | MASTER ANNOUNCED THAT ALL CREW MUSTERED IN |
| | THE BRIDGE EXCEPT 1 CREW ONDECK [...] |
| | HOSE DISCONNECTED |
| | BARGE FREEDOM CAST OFF |
| | NEW YORK POLICE CHECKING VSL SOUROUNDING |
| | U.S.C.G FIRE FIGHTING VSL ALONGSIDE (STB [...]) |
| | VSL ADVISED TO CAST OFF FIRE FIGHTING VSL WE HAVE |
| | FLAMMABLE CARGO. |

EMS Ship Management

# PORT LOG

m/r _PICHEM DEFIANCE_    Port of _NEW YORK_

Dated _10 JUN. 10_    Berth _GRAVESEND BAY ANCHOR_

| DATE | DESCRIPTION |
|------|-------------|
| 1110 | 3 U.S.C.G FIRE FIGHTER ONBOARD |
| 1140 | 1 U.S.C.G FIRE FIGHTER ONBOARD |
| 1205 | 4 U.S.C.G ONBOARD |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Ullage report**

| Vessel: SICHEM DEFIANCE | Port: NEW YORK, USA | Voy no: 056 |
| Cargo grade: P - 550 | Terminal: GRAVESEND BAY, ANCHORAGE | Date: 19/01/2010 |

Draft for.: 5.36 m
Draft aft.: 7.90 m
Trim: 2.54 m



Density at 15C (IN VAC)   0.8898
TABLE-54B

| Tank No. | UTI Ullage cm. | Temp. C° | Trim corr. | List corr. | Corr. Ullage | Obs.volume cub.m | OBQ/ Water | Gross Volume | VCF | Volume at 15 C° | Weight MT VAC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1P | 3.640 | 4.05 | +0.038 | 0.00 | 3.678 | 583.442 | | 583.442 | 1.0090 | 588.693 | 506.758 |
| 1S | 3.820 | 3.76 | +0.038 | 0.00 | 3.858 | 568.332 | | 568.332 | 1.0092 | 573.561 | 493.147* |
| | | | | | | | | | | | |
| Total | 1151.774 | | | | | | | | Total: | 1162.254 | |

|  | IN VAC | IN AIR |
|---|---|---|
| | 999.306 | 997.851 |

FOR ULL. & TEMP ONLY

Chief officer _____     Surveyor _____

CETANKFORM no. 07



# EITZEN GROUP
Est. 1883

## Ullage report

| Vessel: SICHEM DEFIANCE | Port: NEW YORK, USA | Voy no: | |
|---|---|---|---|
| Cargo grade: P-900 | Terminal: GRAVESEND BAY, ANCHORAGE | Date: | 19/01/2010 |

Draft for: 5.36 m.
Draft aft: 7.90 m.
Trim: 2.54 m.

**LAB PARCEL 2**

TABLE 54B
Density at 15C (IN VAC)    0.8520

| Tank No. | UTI Ullage cm. | Temp. C° | Trim corr. | List corr. | Corr. Ullage | Obs.volume cub.m | OBQ/ Water | Gross Volume | VCF | Volume at 15 C° | Weight MT VAC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10S | 3.800 | 6.85 | +0.001 | 0.00 | 3.801 | 287.235 | | 287.235 | 1.0066 | 289.131 | 249.231 |
| | | | | | | | | | | | 248.913 |

| | Total | 287.235 | | Total | 289.131 | | 249.231 IN VAC |
|---|---|---|---|---|---|---|---|
| | | | | | | | 248.913 IN AIR |

FOR ULL. & TEMP ONLY

CETANKFORM no. 07

Chief officer _____          Surveyor _____

| Vessel: M/T Sichem Defiance | | | Port: NEW YORK | | | | Voy no: 56 /2009 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Terminal: GRAVESEND ANCHORAGE | | | | | | | Date: 19 JAN. 2010 | | | | |

Draft fwd: 5.36 m
Draft aft: 7.90 m
Trim: 2.54 m

Cargo= Anhydrous Ethanol
Density @ 20 C = 0.7932 air
Corr.factor .ABNT tab.



ETHANOL PARCEL 1

| Tank No. | Cargo Grades | Ullage cm. | Trim corr. | Corr. ullage | Volume in CBM at obs. Temp. | Cargo Temp F. | Volume Corr. Factor | Net volume | Density at ldd. temp. | Vsl BBLS | Vsl mts (air) | vsl/shore stop |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1P |  |  |  |  |  |  |  |  |  |  |  |  |
| 1S |  |  |  |  |  |  |  |  |  |  |  |  |
| 2P | ETHANOL | 3.900 | -0.010 | 3.890 | 826.920 | 38.6 | 1.01350 | 838.083 |  |  |  |  |
| 2S | ETHANOL | 3.880 | -0.010 | 3.870 | 829.515 | 37.8 | 1.01400 | 841.128 |  |  |  |  |
| 3P |  |  |  |  |  |  |  |  |  |  |  |  |
| 3S |  |  |  |  |  |  |  |  |  |  |  |  |
| 4P |  |  |  |  |  |  |  |  |  |  |  |  |
| 4S |  |  |  |  |  |  |  |  |  |  |  |  |
| 5P | ETHANOL | 11.820 | -0.009 | 11.811 | 22.580 | 38.1 | 1.01390 | 22.894 |  |  |  |  |
| 5S | ETHANOL | 4.315 | -0.008 | 4.307 | 860.199 | 36.8 | 1.01460 | 872.758 |  |  |  |  |
| 6P |  |  |  |  |  |  |  |  |  |  |  |  |
| 6S |  |  |  |  |  |  |  |  |  |  |  |  |
| 7P | ETHANOL | 3.970 | -0.008 | 3.962 | 898.713 | 36.8 | 1.01460 | 911.834 |  |  |  |  |
| 7S | ETHANOL | 3.810 | -0.008 | 3.802 | 916.270 | 36.2 | 1.01500 | 930.014 |  |  |  |  |
| 8P |  |  |  |  |  |  |  |  |  |  |  |  |
| 8S |  |  |  |  |  |  |  |  |  |  |  |  |
| 9P |  |  |  |  |  |  |  |  |  |  |  |  |
| 9S | ETHANOL | 3.740 | -0.008 | 3.732 | 853.993 | 39.9 | 1.01270 | 864.839 |  |  |  |  |
| 10P |  |  |  |  |  |  |  |  |  |  |  |  |
| 10S |  |  |  |  |  |  |  |  |  |  |  |  |
| | Total | | | | 5208.190 | 1.014 | 0.70983 | 5281.550 | Total: | 33219.946 | 4,189.33 | |

ARTURO S. NARAL
Chief officer

Surveyor

CETANKFORM no. 07                                      20-04-2005

# Ullage report

| Vessel:M/T Sichem Defiance | | Port : NEW YORK | Terminal:GRAVESEND ANCHORAGE | | Voy no: 56 /2009 | | Date: 19 JAN. 2010 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Draft fwd: 5.36 m
Draft aft: 7.90 m
Trim: 2.54 m

Cargo= Anhydrous Ethanol
Density @ 20 C = 0.7932 air
Corr.factor. ABNT tab.



ETHANOL PARCEL 2

| Tank No. | Cargo Grades | Ullage cm. | Trim corr. | Corr. ullage | Volume in CBM at obs. Temp. | Cargo Temp F. | Corr. Factor | Net volume | Density at ldd. temp. | Vsl BBLS | Vsl mts (air) | vsl/store stop |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1P | | | | | | | | | | | | |
| 1S | | | | | | | | | | | | |
| 2P | | | | | | | | | | | | |
| 2S | | | | | | | | | | | | |
| 3P | | | | | | | | | | | | |
| 3S | | | | | | | | | | | | |
| 4P | ETHANOL | 1.590 | -0.001 | 1.589 | 660.980 | 37.0 | 1.01450 | 670.564 | | | | |
| 4S | | | | | | | | | | | | |
| 5P | | | | | | | | | | | | |
| 5S | | | | | | | | | | | | |
| 6P | ETHANOL | 4.100 | -0.001 | 4.099 | 501.179 | 37.1 | 1.01440 | 508.396 | | | | |
| 6S | ETHANOL | 1.530 | -0.001 | 1.529 | 651.704 | 36.7 | 1.01460 | 661.219 | | | | |
| 7P | | | | | | | | | | | | |
| 7S | | | | | | | | | | | | |
| 8P | ETHANOL | 11.330 | 0.023 | 11.353 | 39.926 | 39.9 | 1.01270 | 40.433 | | | | |
| 8S | | | | | | | | | | | | |
| 9P | | | | | | | | | | | | |
| 9S | | | | | | | | | | | | |
| 10P | | | | | | | | | | | | |
| 10S | | | | | | | | | | | | |
| | Total | | | | 1853.789 | | | 1880.612 Total: | 11828.692 | | 1,491.70 | |

ARTURO S. NARAL
Chief officer

CETANKFORM no. 07

Surveyor

# Exhibit 3

*Meehan Declaration*

# MEEHAN, WAYNE

| | |
|---|---|
| **From:** | MEEHAN, WAYNE |
| **Sent:** | Thursday, January 21, 2010 5:29 PM |
| **To:** | 'Jeff Sayers'; 'mseymour@imcmarine.com'; 'glong120@aol.com'; 'Charlie Ellwanger'; 'PPower'; 'w.schonborn@loc-group.com'; 'info@crcco.com'; 'Kirk Lyons'; 'gert.josefsson@surveyassociation.com'; 'Robert Hogg'; 'joc@mtdusa.com'; 'Ronald E. Williamson'; 'ccushing@crcco.com' |
| **Subject:** | RE: Sichem Defiance - tank inspections January 22, 2010, Gravesend Bay |
| **Attachments:** | 20100121172110323.pdf |

After my email earlier today, I received several calls from people asking if we could push the inspections up. I have spoken with the vessel and we will try to accommodate that request. We will plan on the inspection starting at 10 AM onboard the vessel which means that you should probably plan on being at Miller's launch at 9:30 AM. For those who do not know, Miller's launch is located at pier 7.5 on Staten Island (if you need directions, their phone number is 718 727 7303)

We are pushing the inspection up to accommodate people's schedules, but want you all to know that there is a potential problem. We were advised today the the LELs are slightly elevated and the flag state has re-instated the ban on access to the tanks, pending another verification from the marine chemist. We are trying to have the chemist come out tonight or first thing tomorrow morning, but want you all to know that it is possible that there may be delays depending on how this pans out.

Also, attached is a release which owners will require that everyone sign as prerequisite to being provided with access to the tanks.

Regards,

Wayne

**WAYNE D. MEEHAN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Cell: 917-744-6562
E-mail: meehan@freehill.com

---

**From:** MEEHAN, WAYNE
**Sent:** Thursday, January 21, 2010 1:36 PM
**To:** 'Jeff Sayers'; mseymour@imcmarine.com; glong120@aol.com; Charlie Ellwanger; PPower; w.schonborn@loc-group.com; 'info@crcco.com'; 'Kirk Lyons'; 'gert.josefsson@surveyassociation.com'; Robert Hogg; joc@mtdusa.com
**Subject:** RE: Sichem Defiance - tank inspections January 22, 2010, Gravesend Bay

As you know from our attendance onboard the vessel yesterday, the Coast Guard refused to allow any tank gauging/sampling and refused to permit access to the vessel's tanks for inspection. We have learned that the Coast Guard has now cleared the vessel and as a result, the tank gauging/sampling and tank inspections may go forward. The cargo sampling and gauging will go forward today.

As far as the tank surveys are concerned, we are in the process of verifying that the vessel is

clear for those inspections as well. We will advise later today, but we have tentatively scheduled the commencement of the joint survey for noon on Friday, January 22, 2010. I suggest that all parties arrange to arrive onboard the vessel at noon. After a brief meeting to discuss the procedure, our intention is to permit all parties to view the PV valves in place and then proceed with the tank inspections. As you can appreciate, there will be limits regarding the number of people we can allow in the tanks at the same time, and we will work out an order/schedule. The inspection must be carried out in a controlled manner and access is being granted with the understanding that all surveyors will remain together and not "wander" around the ship, and with the further understanding that there will be no crew interviews without our specific permission.

As per our discussions onboard, attached are the following documents to facilitate your inspections onboard:

1. Ship's Particulars;
2. Ship-Shore Safety Checklist;
3. Cargo Stowage Plan;
4. Hourly Rate Record;
5. Port Log;
6. Ullage sheets showing current location of cargo onboard;

You have also asked for certain plans for the vessel. As you can appreciate, copying the plans is difficult from a practical standpoint, but we will make every effort to have plans available for your review prior to the inspection. Given the number of people involved, we must ask that you coordinate any requests for additional documentation through our office.

Also, we will have to arrange for clearance for those attending, and we ask that all parties intending to participate respond to this email identifying the individual who will participate and the specific party/interest they represent.

Best regards,

Wayne

**WAYNE D. MEEHAN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Cell: 917-744-6562
E-mail: meehan@freehill.com

# MEEHAN, WAYNE

**From:** MEEHAN, WAYNE

**Sent:** Tuesday, January 26, 2010 6:01 PM

**To:** 'glong120@aol.com'; 'Charlie Ellwanger'; 'PPower'; 'info@crcco.com'; 'Kirk Lyons'; 'gert.josefsson@surveyassociation.com'; 'Robert Hogg'; 'joc@mtdusa.com'; 'Ronald E. Williamson'; 'ccushing@crcco.com'

**Subject:** RE: Sichem Defiance - continuation of pressure monitoring/alarm system test

I will not know until tomorrow morning, but it appears that we may be able to go forward with the testing of the pressure monitoring alarm system tomorrow. I will advise as soon as I know. Anyone wishing to attend, pls respond by email. Attendance onboard will be limited to observing the testing carried out by the technician and will be pursuant to the terms of the boarding agreement which you have already signed.

Also, the USCG has instructed us to do nothing with the PV valves without their approval and we will keep you advised.

Regards,
Wayne

# MEEHAN, WAYNE

| | |
|---|---|
| **From:** | MEEHAN, WAYNE |
| **Sent:** | Wednesday, January 27, 2010 10:10 AM |
| **To:** | 'Pierce N. Power'; MCohen@nicolettihornig.com |
| **Cc:** | glong120@aol.com; Charlie Ellwanger; info@crcco.com; Kirk Lyons; gert.josefsson@surveyassociation.com; Robert Hogg; joc@mtdusa.com; Ronald E. Williamson; ccushing@crcco.com; Wayne Thomas |

**Subject:** RE: Sichem Defiance - continuation of pressure monitoring/alarm system test

The technician advises that the equipment is ready. We have spoken with USCG and the test will go forward at approximately 1300. Suggest that all attending meet at Miller's launch at 1230. This is being coordinated with USCG, class and the Flag State investigators and we must stick to the schedule.

Best regards,

Wayne

---

**From:** Pierce N. Power [mailto:PPower@martinottaway.com]
**Sent:** Tuesday, January 26, 2010 6:09 PM
**To:** MEEHAN, WAYNE
**Cc:** glong120@aol.com; Charlie Ellwanger; info@crcco.com; Kirk Lyons; gert.josefsson@surveyassociation.com; Robert Hogg; joc@mtdusa.com; Ronald E. Williamson; ccushing@crcco.com; Wayne Thomas
**Subject:** Re: Sichem Defiance - continuation of pressure monitoring/alarm system test

Wayne

I would like to attend, however, I will be in DC. My colleague Wayne Thomas copied in on this e-mail will attend in my place. Wayne's cell is 908-568-7868.

Regards

Pierce

On Jan 26, 2010, at 6:01 PM, "MEEHAN, WAYNE" <MEEHAN@FREEHILL.COM> wrote:

I will not know until tomorrow morning, but it appears that we may be able to go forward with the testing of the pressure monitoring alarm system tomorrow. I will advise as soon as I know. Anyone wishing to attend, pls respond by email. Attendance onboard will be limited to observing the testing carried out by the technician and will be pursuant to the terms of the boarding agreement which you have already signed.

Also, the USCG has instructed us to do nothing with the PV valves without their approval and we will keep you advised.

Regards,
Wayne

---

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If you are not the intended

2/4/2010

recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone - (212) 425-1900. Thank you.

## MEEHAN, WAYNE

| | |
|---|---|
| **From:** | MEEHAN, WAYNE |
| **Sent:** | Friday, January 29, 2010 12:05 PM |
| **To:** | 'glong120@aol.com'; 'Charlie Ellwanger'; 'PPower'; 'info@crcco.com'; 'Kirk Lyons'; 'gert.josefsson@surveyassociation.com'; 'Robert Hogg'; 'joc@mtdusa.com'; 'Ronald E. Williamson'; 'ccushing@crcco.com'; 'John Poulson' |
| **Cc:** | 'Michael Marks Cohen'; 'Vadali Murthy - EMS Ship Management IN' |
| **Subject:** | SICHEM DEFIANCE - calibration pressure monitoring /alarm testing equipment |
| **Attachments:** | 20100129115607324.pdf; 20100129115702123.pdf |

As you know, Mr. K. Kezuka of Tokyo Keiso conducted a test of the pressure monitoring/alarm system onboard the Sichem Defiance for tanks 3 Port 3 Starboard and 4 Starboard on January 27. A copy of the test results as well as the surveyors' field notes are attached. I understand that certain of the surveyors have expressed concern about the recency of the calibration record for the equipment which Mr. Kezuka used to perform his tests. As a result, we have arranged for Mr. Kezuka to bring that testing equipment to Lucius Pitkin for testing/calibration. That analysis will be performed today at Lucius Pitkin's office at 1500, and you are welcome to attend the testing in you choose. For your information, Lucius Pitkin's facility is located at 304 Hudson St., 4th floor in Manhattan. Their phone number is 212 233 2737. (contact: Mr. Robert Vecchio) Unfortunately, we cannot re-schedule the test as Mr. Kezuka has other commitments and is flying back to Tokyo tomorrow.

Please reply by e-mail if you intend to witness the testing. We will provide everyone with copies of the results.

Best regards,

Wayne

**WAYNE D. MEEHAN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Cell: 917-744-6562
E-mail: meehan@freehill.com

## MEEHAN, WAYNE

| | |
|---|---|
| **From:** | MEEHAN, WAYNE |
| **Sent:** | Sunday, January 31, 2010 6:56 PM |
| **To:** | 'Pierce N. Power' |
| **Cc:** | J. O'Connor; Michael Cohen; glong120@aol.com; Charlie Ellwanger; gert.josefsson@surveyassociation.com; Robert Hogg; Ronald E. Williamson; ccushing@crcco.com; David Hall; John Walker; MTD - HOU |
| **Subject:** | RE: Sichem Defiance - Request for Testing of the High and High/High Alarms |
| **Attachments:** | Fwd: 1678 - SICHEM DEFIANCE |

The repairs to the vessel will commence tomorrow morning as soon as gas free certificate is issued. Suggest that anyone interested in participating in further inspections arrange to be at the yard by 0800. We will arrange access to the tanks not previously available. As far as tanks already inspected are concerned, I will discuss with vessel representatives in the morning, but please understand that we cannot agree to delay repairs to permit re-inspection of tanks to which you have already been provided full and complete access.

Any questions, feel free to call me.

Regards,

Wayne

P.S. Attached are hold harmless agreements which the yard will require as a prerequisite to permitting you to go onboard.

**WAYNE D. MEEHAN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Cell: 917-744-6562
E-mail: meehan@freehill.com

---

**From:** Pierce N. Power [mailto:PPower@martinottaway.com]
**Sent:** Sunday, January 31, 2010 2:57 PM
**To:** MEEHAN, WAYNE
**Cc:** J. O'Connor; Michael Cohen; glong120@aol.com; Charlie Ellwanger; gert.josefsson@surveyassociation.com; Robert Hogg; Ronald E. Williamson; ccushing@crcco.com; David Hall; John Walker; MTD - HOU
**Subject:** Re: Sichem Defiance - Request for Testing of the High and High/High Alarms

Wayne

That is correct.

Regards

Pierce

2/4/2010

On Jan 31, 2010, at 1:39 PM, "MEEHAN, WAYNE" <MEEHAN@FREEHILL.COM> wrote:

I will check my notes and speak with Peter about what was agreed. In any event, I still do not understand the sentence "we would kindly like to view the No. 3 port and starboard side water ballast and cargo tanks to include those of the No. 4 starboard side cargo and water ballast tanks" Are you asking to reinspect all of the tanks?

**From:** PPower [mailto:ppower@martinottaway.com]
**Sent:** Sunday, January 31, 2010 1:31 PM
**To:** MEEHAN, WAYNE; 'J. O'Connor'; Michael Cohen
**Cc:** 'glong120@aol.com'; 'Charlie Ellwanger'; gert.josefsson@surveyassociation.com; 'Robert Hogg'; 'Ronald E. Williamson'; ccushing@crcco.com; David Hall; John Walker; MTD - HOU
**Subject:** Re: Sichem Defiance - Request for Testing of the High and High/High Alarms

Wayne

You may recall when Peter Stokbro, Fleet Manager, Eitzen Group, Robert Hogg for H&M and I came out of the No. 3 port side cargo tank on Friday, January 22, 2010, I requested to go back into the affect cargo tanks to further document the actual damages at a more opportune time.

He and you were in accord with this pending when the tanks would be available.

Regards

Pierce

On 1/31/10 1:22 PM, "Wayne Meehan" <meehan@freehill.com> wrote:

Thanks Pierce. I understand that you want to inspect 2P/S and 4P cargo and ballast tanks. I do not understand the second part of your request and I don't know what verbal agreement you are referring to. Can you please clarify?? As far as timing is concerned, I don't know but an trying to find out. I am leaving my office, so won't be in a position to respond to any response emails for a few hours.

Wayne

**From:** PPower [mailto:ppower@martinottaway.com]
**Sent:** Sunday, January 31, 2010 1:12 PM
**To:** MEEHAN, WAYNE; 'J. O'Connor'; Michael Cohen
**Cc:** 'glong120@aol.com'; 'Charlie Ellwanger'; gert.josefsson@surveyassociation.com; 'Robert Hogg'; 'Ronald E. Williamson'; ccushing@crcco.com; David Hall; John Walker; MTD - HOU
**Subject:** Re: Sichem Defiance - Request for Testing of the High and High/High Alarms

Wayne

Here is my e-mail inserted below regarding the tanks. Can you advise when this will be taking place.

Regards

Pierce

On 1/29/10 8:46 AM, "PPower" <ppower@martinottaway.com> wrote:

Wayne:

Could you kindly advise when we can re-attend onboard to complete the survey of the subject vessel, i.e. to inspect the No. 2 port and starboard side cargo and water ballast tanks and the No. 4 port side cargo and water ballast tanks. Further as was verbally agreed, we would kindly like to view the No. 3 port and starboard side water ballast and cargo tanks to include those of the No. 4 starboard side cargo and water ballast tanks. We of course would like to view these areas prior to any other temporary repairs being carried out.

Further could you please advise as to when arrangements are to be made to test the PV valves in place and the high, high high alarms and when the PV valves are to be removed and to where?

Kind regards

Pierce N. Power

On 1/31/10 1:06 PM, "Wayne Meehan" <meehan@freehill.com> wrote:

James,

I seemed to recall that you were the one who sent me the email requesting further tank inspections once the vessel arrived in the yard. I seem to have misfiled that email. Can you pls re-send so that I will know exactly what you are looking for.

Thanks and regards,

Wayne

**From:** J. O'Connor [mailto:joc@mtdusa.com]
**Sent:** Thursday, January 28, 2010 8:18 AM
**To:** MEEHAN, WAYNE
**Cc:** PPower; 'Jeff Sayers'; 'mseymour@imcmarine.com';
'glong120@aol.com'; 'Charlie Ellwanger'; info@crcco.com;
gert.josefsson@surveyassociation.com; 'Robert Hogg'; 'Ronald E.
Williamson'; ccushing@crcco.com; David Hall; John Walker; MTD
- HOU
**Subject:** Re: Sichem Defiance - Request for Testing of the High
and High/High Alarms

Wayne,

I apologize for any confusion yesterday related to the testing of
the cargo monitoring equipment.

On behalf of Cargo and Charterers u/ws we requested that we be
allowed to witness testing of the High and High/High (overfill)
Alarms for the Sichem Defiance's cargo tanks.

Best regards,
James O'Connor

Minton, Treharne & Davies (USA), Inc.
700 Rockmead Drive, Suite #170
Kingwood, TX 77339, USA
email: mtdusa@mtdusa.com
       joc@mtdusa.com
Tel : 281-359-6003  24-hour
Fax : 281-359-6131

IMPORTANT NOTICE: This email is confidential and may be
covered by legal professional privilege. It must not be read,
copied, disclosed or used by any person other than by the above
- named addressee. Unauthorized use, disclosure, copying or re-
transmission (by whatever means) is strictly prohibited and may
be unlawful. If you have received this email in error please
contact us immediately by using the reply facility in your email
software.

------------------------------------------------

PLEASE NOTE: The information contained in this message is privileged and confidential,
and is intended only for the use of the individual named above and others who have been
specifically authorized to receive such. If you are not the intended recipient, you are
hereby notified that any dissemination, distribution or copy of this communication is strictly
prohibited. If you received this communication in error, or if any problems occur with
transmission, please notify us immediately by telephone - (212) 425-1900. Thank you.

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all attorneys of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below service list in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

**VIA CM/ECF and VIA EMAIL**

Michael Marks Cohen
William Fennell
Nicoletti Hornig & Sweeney
Wall Street Plaza
88 Pine St., Seventh Floor
New York, NY  10005

/s/ Wayne D. Meehan
Wayne D. Meehan